GEORGE T. NEWKIRK, RESPONDENT, v. CITY OF TIPTON, MISSOURI, AP-
PELLANT.—136 S. W. (2d) 147.

Kansas City Court of Appeals.   December 4, 1939.

*Frank J. Quigley* and *J. B. Gallagher* for appellant.

924

*Embry & Embry* for respondent.

KEMP, J.—This is a suit for damages for an alleged diminution in the market value of plaintiff's land, as a direct result of the construction by the defendant City of Tipton, in 1934 and 1935, of a sewer system and disposal plant, and the discharge of the effluent therefrom into, and the consequent contamination of, a stream which flows from the point of discharge for a distance of about three hundred feet, and thence into and through plaintiff's land. The petition herein was filed on March 18, 1938.

Defendant's answer, after admitting the construction of the sewer system at the time alleged, and denying generally all other allegations in the petition, alleged that the stream which flowed through the city and on north over plaintiff's land was a natural watercourse into which the natural drainage and sewage of the city had flowed for fifty years; that since the errection of a modern sewer system in 1934 and 1935, by the through which the sewage and waste of the city was collected and carried to its disposal plant and there treated and the solids separated from the liquid and the liquid purified, the waters of said stream have become purer and fresher than they had been prior thereto, and that thus the complained of acts of defendant had resulted in benefit rather than in injury to plaintiff's land; that if foul matter has entered said stream since 1935, it was from the surface drainage or from acts of others over which defendant had, or has, no control, and for which defendant is not liable. Defendant's answer further alleged that because of the long previous usage of the

stream by defendant as a sewer to carry off surface impurities, plaintiff's cause of action, if any he ever had, was barred by the five-year Statute of Limitations, as provided in Section 862, Revised Statutes Missouri, 1929, and by the ten-year Statute of Limitations, as provided in Section 861, Revised Statutes Missouri, 1929. The reply was a general denial.

The City of Tipton is a city of the fourth class, situated in Moniteau County, Missouri. In 1934, it commenced the construction of a general sewer system and, according to its contention, a modern disposal plant consisting of three units—an Imhoff tank, a filter and a final settling tank—from which the effluent is discharged into the stream herein referred to. This sewer system and disposal plant was completed in 1935.

One Alva White owned a tract of land of approximately two acres adjoining plaintiff's (respondent's) land on the south. The defendant (appellant) city purchased the south acre of this tract whereon it erected its said disposal plant.

The plaintiff owns a farm of 145 acres, which he had acquired some ten or eleven years prior to the construction of said sewer system. This farm is situated partly within and partly adjacent to the north part of the City of Tipton. Four smaller streams of water run generally from the south to the north through the City of Tipton and converge at or above the disposal plant, and thus form the stream in question which flows thence in a northerly direction through the small tract retained by White and thence through plaintiff's farm. The effluent from the sewer disposal plant is discharged into this stream at a point approximately three hundred feet south of the point at which the stream enters plaintiff's farm.

White was then operating, and for a long time prior thereto had operated, a slaughterhouse on his land so lying between the disposal plant and plaintiff's farm, and the offal and refuse from the slaughterhouse was, and for many years had been, dumped on his land where it was fed to hogs. There was testimony to the effect that some of this offal and refuse gets into the stream in question.

There was evidence to the effect: that plaintiff's farm was valuable for cultivation, and particularly for pasturage and stock raising; that the stream in question was fed by springs on plaintiff's land which continued to flow through persistent dry weather, thus affording a constant source of pure stock water; that the farm had been pastured for years, and that prior to the construction of said sewer system and disposal plant, the stock pastured thereon drank the water from this stream with no harmful effects; that following the construction of the sewer system and the discharge of the effluent therefrom into said stream, cattle on plaintiff's farm continued to drink from said stream and that a number of them became sick, lost weight, milk from the cows became unusable, and some died; that at

the time plaintiff's cattle were sick, the tanks had apparently over-
flowed and there was great chunks of filth scattered down the whole
side—fifteen or twenty feet from the tanks, "just pure filth;" "there
was a vat where the sewage empties from the pipes. This had been
cleaned out and scattered out on the hillside; there was a full knee
high all over filth just scattered out on the bank, from the sewer;"
that drainage from this was directly into the stream; that when the
cattle were removed from contact with the water of this stream, no
further trouble developed and several that had become so afflicted
regained their health. There was also evidence to the effect that fol-
lowing the construction of the sewer an offensive slime formed on the
rocks in the stream and a nasty, odorous scum formed on the water,
and in winter when the water would freeze the ice was green; that
cows standing in the water became filthy when the stream over-
flowed its banks, as it often did, foul substances were left on the
grass, and the grass so overflowed was ruined; that none of these
conditions. existed prior to the construction of the sewer system. There
was also evidence that prior to the construction of the sewer system,
there were fish in said stream, but since the discharge of the effluent
from the disposal plant into the stream the fish and disappeared.

Plaintiff offered evidence tending to show a substantial diminu-
tion in the value of plaintiff's farm as a result of the conditions
brought about by the discharge of the effluent from the sewer system
into said stream. The plaintiff himself testified to a decrease in value
of $25 per acre.

With respect to the operation of the sewer system and disposal
plant, defendant offered evidence tending to show that all solid
matter was separated from the sewage and that the liquid portion
was subjected to a purifying process that left the effluent discharged
in the stream clear and far less deleterious than the natural drainage
from the city which had previously flowed into said stream; that there
was scum on the water prior to the construction of the sewer plant,
and that there was pure water in the stream, and that there was no dif-
ference in this respect since the construction of the plant; that hogs
and other livestock on the White tract, immediately above plaintiff's
farm, drank from the water of this stream without any ill effects.

Upon trial of the case, there was a verdict for plaintiff for $1000,
and judgment was rendered accordingly. From said judgment, de-
fendant city prosecutes this appeal.

We shall continue to refer to respondent as plaintiff and to appel-
lant as defendant.

Defendant complains of the court's refusal to sustain its demurrers
to the evidence offered, respectively, (a) at the close of plaintiff's case,
and (b) at the close of all the evidence. By failure to stand on its
demurrer offered at the close of plaintiff's case, the same was waived
and hence only the demurrer to all the evidence, requested at the

close of the entire case, is before us for review. [Clay v. Owen, 93 S. W. (2d) 914, l. c. 915.] In support of this complaint, defendant makes the following contentions:

(1) The evidence raises only a suspicion that the effluent from defendant's disposal plant was responsible for plaintiff's cattle becoming ill;

(2) The only witnesses "who were allowed or qualified to testify as to value of respondent's farm, before and after disposal plant was built were his son Norman, his son-in-law Williams, Ed Geiser" (who made only one trip to the farm after disposal plant was built), and "the respondent himself;"

(3) No right of plaintiff as a riparian owner was violated by defendant's use of the stream in the manner complained of, as plaintiff must submit, without compensation to the reasonable use of the stream by upper proprietors;

(4) Defendant City "had used this stream as a sewer for outdoor toilets, cesspools, sinks . . . two public septic tanks and one private septic tank for many years and for more than five years prior to the institution of this suit," and hence plaintiff's cause of action is barred by the five-year Statute of Limitations, Section 862, Revised Statutes Missouri, 1929.

Considering only the evidence most favorable to plaintiff and allowing the most favorable inferences to be drawn therefrom, as must be done in ruling a demurrer to the evidence, we think a submissible case was made. Disregarding the contradictory testimony offered on behalf of the defendant, there was evidence to the effect that the effluent discharged from defendant's disposal plant was a foul, highly-colored, odorous liquid. There was also evidence from which a jury could conclude that the stream was in a worse estate of contamination following the completion of the sewer system and disposal plant than prior thereto, and there being no evidence of change of other conditions adversely affecting the water of the stream, the jury might fairly infer that the increased contamination of the stream was due to the discharge of the effluent from the disposal plant into the stream.

Defendant's challenge of the sufficiency of the evidence with reference to depreciation in the value of plaintiff's farm seems to be based, primarily, upon the interest and relationship of the parties testifying to this fact. The interest of a witness in the result of the litigation or the relationship of the witness to a party to the suit are matters for the jury's consideration in passing upon the *weight* to be given to the testimony of such witness. These facts do not affect either the competency of these witnesses to testify or the competency of the testimony.

Defendant raises the point in his brief that the witnesses testifying as to depreciation of the land were not sufficiently qualified, and that they were permitted to give the difference in value before the con-

struction of the disposal plant and the value thereafter, without showing that they were familiar with and knew the values before and after. The only objections raised to the testimony offered with respect to the depreciation in the value of plaintiff's land was on the ground that the witnesses were not shown to be qualified.

While the qualifications of the witnesses testifying on the question of depreciation in the value of plaintiff's farm were not impressive, nevertheless each witness was shown to have some familiarity with the values of farm land in that vicinity. We do not think the trial court can be convicted of error in admitting this testimony, and we think it was merely a matter for the jury to say what weight should be given to such testimony. The estimates of plaintiff and of the witnesses testifying in his behalf were in excess of the amount of the verdict, and hence, on this point, there was sufficient evidence to sustain a verdict.

While the witnesses testifying on the question of depreciation in value were not asked to state the value of the land before the construction of the sewer system and the value of the land immediately subsequent thereto, but were asked to state whether or not in their opinion the land was of more or less value after the completion of the sewer system than before, and to state what the difference was, no objection was made to this method of inquiry, and hence the point is not before us for review.

It seems to be defendant's position that plaintiff, as a lower riparian owner, has no cause of action for damages suffered by him as the result of the pollution of the stream by the discharge by the city of its sewage, or the effluent from its sewage disposal plant, therein. With this we cannot agree.

As authority for this contention, defendant cites the case of Joplin Consolidated Mining Co. v. City of Joplin, 124 Mo. 129, quoting therefrom the following language, l. c. 135:

"The proprietor of land through which a stream flows cannot insist that the water shall come to him in the natural, pure state. He must submit, and that, too, without compensation, to the reasonable use of it by the upper proprietors; and he must submit to the natural drainage coming from towns and cities."

But immediately following the language quoted in defendant's brief, and in the same paragraph of the opinion, the Supreme Court rules directly against defendant's contention, in the following language:

"But a city has no right to gather its sewage together and cast it into a stream so as to injure the lower proprietor. For the damages thus sustained, the lower proprietor will have an action, and in many instances injunctive relief. [Citing cases.]"

After referring to pertinent statutory provisions, the court there said, l. c. 136:

"We, therefore, hold that the city of Joplin has the right and power to construct the public sewer in question so that it will discharge its contents into Joplin creek. Whether the city can do this so as to create a public nuisance we need not inquire, for in our opinion the evidence makes out no such a case. It does, however, tend to show that the plaintiff's lands will be damaged by the discharge of the sewer matter into the creek. Whether this damage would amount to the taking of private property for public use is not important to inquire; for our constitution declares that private property shall not be taken or *damaged* without just compensation. *If the discharge of the sewer matter into the creek will decrease the value of the plaintiff's land through which the creek runs, then the damage thus done is clearly within the constitutional provision, and the plaintiff must have compensation therefor.* [Van DeVere v. Kansas City, 107 Mo. 84.]" (Italics ours.)

In the case at bar, no condemnation proceedings were ever had in connection with the city's use of this stream for the discharge therein of its sewage or of the effluent from its sewage disposal plant. Upon the completion of its sewer system and sewage disposal plant in 1935, the city merely appropriated the use of the stream in question to this purpose. Under the well-settled law in this State, the appropriation by a city of the use of a stream for sewer purposes does not deprive a lower riparian owner of his right to compensation for any damages suffered by him as a result thereof. The measure of damages to which the city must respond in case either of condemnation or appropriation without condemnation, is the diminution in market value of the land damaged thereby. It was so expressly held in Smith v. City of Sedalia, 244 Mo. 107, l. c. 122, 149 S. W. 597, l. c. 600, wherein the court said:

"This suit is not grounded upon trespass merely, nor upon nuisance, although the injury takes the form of a nuisance, but upon the constitutional right to compensation for property damaged for public use (Webster v. Railroad, 116 Mo. l. c. 118; Turner v. Railroad, 130 Mo. App. 540); and it is so argued in plaintiff's brief. The city, by proper proceedings to that end, had the right by statute to secure the use of this stream for sewer purposes. The city did not condemn, but appropriated the use. Such action, however, does not deprive the plaintiff of his right to compensation, nor does it affect the measure measure of damages, which, for such use by the city, whether by condemnation or appropriation, is the diminution in market value of the land damaged. As this court said in McReynolds v. Railroad, 110 Mo. l. c. 488, 'no good reason, founded upon principle, can be assigned why the same rule should not be applied in both classes of cases' (condemnation and appropriation); 'the injury is the same, the damage is the same, and the compensation should be the same.' "

This case and the specific language just quoted was expressly ap-

proved in the very recent case of Riggs v. City of Springfield, 126 S. W. (2d) 1144, l. c. 1148.

Defendant relies upon the case of City of Cape Girardeau v. Hunze, 314 Mo. 438. In the first place, the facts were quite different from the facts in the case at bar. The former was a condemnation suit whereby the city sought to acquire two kinds of rights, (1) a permanent easement through a strip of land of defendant for a sewer pipe line, manholes and appurtenances, and rights to enter thereon at necessary times for the maintenance and repair of said pipe line, and (2) the use of Cape LaCroix Creek as an outlet to the Mississippi River from the newly formed sewer district to take care of the surface water and such sewage as the underground sewer line might be inadequate to to carry off in time of heavy rainfall. The defendant was there awarded damages in the condemnation proceeding. Without going into further detail, we refer to a suit subsequently brought by this defendant Hunze against the City of Cape Girardeau for damages sustained by him from sewage disposed in said creek and upon his land during the period that the large sewer main was out of repair. [Hunze v. City of Cape Girardeau, 43 S. W. (2d) 882.]

The case of City of Cape Girardeau v. Hunze, does not, however, conflict in any way with what we have heretofore said or with the authorities herein cited. The Supreme Court there said, l. c. 471:

"In other words, if the city does not cause the waters of Cape LaCroix Creek to be polluted beyond the extent of their pollution from the natural wash and drainage coming from the city and upper proprietors before the opening of the sewer system, or to be rendered more unfit for use than such waters were prior to the construction of the sewer, appellants have no lawful claim for compensation or damages. . . . On the other hand, however, the city must respond in damages in the event that its use of the creek so pollutes the waters thereof as to render the same more unfit for use than they were prior to the construction and operation of the sewer system, or so pollutes the stream as to deprive the appellants of the uses of the water they would otherwise reasonably enjoy. This principle is recognized in Joplin Consolidated Mining Co. v. City of Joplin, *supra* . . ."

In other words, if the action of a city in discharging sewage into a stream does not render the water more unfit for use by a lower riparian owner, such owner has suffered no damage by the action of the city. But, certainly, the rule of law announced here cannot be said to conflict with plaintiff's right to recover in the instant case, for, as heretofore pointed out, there was evidence in the instant case from which the jury could reasonably conclude that the action of the city in discharging effluent from its disposal plant into the stream polluted the waters thereof so as to render them "more unfit for use than they were prior to the construction and operation of the sewer system."

We now pass to defendant's contention that plaintiff's cause of action, if any he ever had, is barred by the five-year Statute of Limitations. In support of this point, defendant urges that the city of Tipton was built at the head of this stream, and from the beginnings of the city down to the time of the construction of the sewer system and disposal plant, it had exercised the right to use the stream for the carrying away of untreated sewage; that for more than ten years prior to the construction of the sewage plant, three septic tanks emptied into the stream; that one was located at the hotel, another at the railroad station, which were public places, and that these two septic tanks should therefore be classified as public septic tanks (there is, however, no evidence that they were constructed, maintained or ever owned by the city); that the other septic tank was located on the James property as a private septic tank, and that thereafter two of these septic tanks were connected with the new sewer; that the natural wash and drainage of the city carried sewage and waste of the city into said stream.

Defendant further urges that it did not take an ordinance of the Board of Aldermen to originally plan and establish the stream as a sewer for the city; that the very fact that the city was established at the head of this stream and began using it as a drainage for natural purposes was all that would be necessary to constitute an appropriation of the stream to the use of sewage disposal of the city. In other words, defendant contends that the city had many years ago appropriated this stream to the use of sewage disposal by virtue of the fact that the natural wash and drainage of the city flowed into the stream, and that the building of the sewer system and the collection and carrying of sewage through its mains to a disposal plant and the discharge of the effluent from the disposal plant into the stream was a mere continuation of the use of the stream which the city had, from its beginnings, appropriated.

Defendant cites no authority, and we know of none, which lends support to the suggestion that the natural wash and drainage from a town or city constitutes an appropriation by the city of the use of the stream into which such natural drainage flows, for the purpose of sewage disposal. The City of Tipton could gain no prescriptive right to pollute with its sewage the watercourse in question from the acts of the individual dwellers therein. Proof of user *by individuals* of a stream for a particular purpose does not constitute proof of user *by the city* for such purpose. This was so held in the case of Smith v. City of Sedalia, 152 Mo. 283, wherein the court, in passing upon an instruction, said, l. c. 298:

"This instruction also, in the light of the evidence, would confer on the city the prescriptive right to pollute the watercourse with its sewage because individuals and private concerns had for the period of ten years committed nuisances which produced more or less pollu-

tion of the stream. But one man cannot build his edifice on another's foundation. The period of user by one cannot establish a prescriptive right in another, unless he is successor to the rights of the other by privity of estate. Evidence that the gas company and owners of the slaughterhouse had for years cast offensive matter into a natural tributary of this stream, has nothing to do with this case except as bearing on the question of damages, as their drains were no part of the city's sewer now complained of."

So far as the record before us shows, the City of Tipton had never taken any action of any kind with respect to the collection and disposal of city sewage prior to the time of the construction of a sewer system and disposal plant in 1934 and 1935. This construction work was completed in 1935, when for the first time the city, as such, began to discharge its sewage or the effluent therefrom into the stream.

We must hold, therefore, that the date of the appropriation by the city of the use of the stream for sewage disposal coincided with the completion of the sewage system and the commencement of the discharge of the effluent from the disposal plant into the stream, and that no statute of limitations applicable to plaintiff's cause of action began to run until this date—1935.

Defendant, in support of its contention to the contrary, relies upon the case of Riggs v. City of Springfield, *supra.* In that case, however, it was pointed out that the city established a sewer system in 1893, whereby, the sewage of the city, or at least a large portion of the city, was conveyed through laterals and mains to a given point and there discharged into the stream. This constituted an appropriation by the city of the use of the stream for this purpose, and it was held that the statute of limitations ran from the date of this appropriation, rather than from the long subsequent date of the construction of additions to the already existing sewer system. The court said, l. c. 1152:

"At all events back in 1893, the city appropriated an easement for the drainage of untreated sewage and exercised this right for a period of twenty years. The testimony shows that raw sewage was seen in the creek from the beginning and that during at least a part of that period the condition of the creek as to the presence of sewage, pollution, and smells, was bad. The increase in sewage was caused by the natural and to be expected increase in the population of the city, *by the normal extension of the system of sewers as originally planned, and not by any change of the basic plan whereby other sewer systems were added.* . . . It would be a harsh rule which would cause the loss of a right acquired by condemnation or appropriation through the voluntary effort of one possessing the right to exercise it in a degree less injurious to others. We hold that the city's right to empty raw, untreated sewage into the watercourse was not lost by the erection of the Imhoff plant or the new plant." (Italics ours.)

From the italicized words, it is apparent that in the Riggs case, the court, in determining when the Statute of Limitations began to run, had under consideration a factual situation, wherein there was a sewer system in existence that long antedated the "new plant" which was merely an extension of the original sewer system, to take care of the normal and to be expected increase in the sewage of the city. In the case at bar, the original and only sewer system for the city was that constructed in 1934 and 1935, prior to which time, whatever sewage got into the stream reached thereby natural drainage from the numerous premises of individuals where it was deposited.

The defendant charges error in giving, at plaintiff's instance, instruction numbered 2, which is as follows:

"The court instructs the jury that, even though you find and believe from the evidence in this case, that the watercourse referred to in evidence is polluted and contaminated by the acts of others acting independently of the defendant City, that fact, if you so find the fact to be, does not relieve the defendant City from responsibility for damages, if any, for the pollution and contamination, if any, of such watercourse by the discharge of sewage into the same, if you so find the fact to be."

Defendant complains of this instruction on the ground that it directs the jury to disregard its defense that the stream was polluted from the natural wash and drainage from the city, due largely to acts of others over which the city had no control, and its defense that the disposal plant did not render the stream more impure and harmful than the water of the stream would otherwise be.

We do not think this is the effect of the instruction. It is undoubtedly the law that the mere fact that others than the defendant contaminated the stream, is not a bar to plaintiff's right to recover, if it further appears that plaintiff has suffered damage from the acts of the city in polluting the stream by the discharge of sewage therein. There was evidence tending to show some contamination from sources other than the defendant, and it was proper to direct the jury that this should not defeat recovery by plaintiff if other facts hypothesized in the instruction were found. Nor does this instruction conflict, as plaintiff contends, with instructions given at defendant's request. Defendant's instruction "F" told the jury that if they found that "large quantities of offal and other foul substances are dumped upon the lands of one Alva White and in the stream (above plaintiff's land) and that other harmful matters are deposited in the stream from the natural wash and drainage from the upper proprietors, and that said stream is thereby polluted . . . and the waters (thereof) . . . caused to be unfit for use, then the City of Tipton must not be held to account to plaintiff in damages for such pollution or the results thereof."

Defendant's Instruction "I" is as follows:

"The court instructs the jury that if the defendant city has not caused the waters of the stream mentioned in the evidence to be polluted beyond the extent of their pollution from the natural wash and drainage coming from the city and upper proprietors before the opening of the sewer system, or to be rendered more unfit for use than such waters were prior to the construction of the sewer system, plaintiff has no lawful claim for compensation or damages, and your verdict must be for the defendant."

If there was any ambiguity or lack of charity in plaintiff's Instruction 2, it was cured by instruction given on behalf of defendant. An erroneous instruction conflicting with a correct instruction cannot be cured by the correct instruction, but instructions should be read together and where an instruction is merely ambiguous, this defect may be cured by another instruction which is correct. [Oldham v. Standard Oil Company, 15 S. W. (2d) 899, 1. c. 900.] Reading these instructions together, we think it clear that Instruction 2 is not subject to the vice charged.

Complaint is made of plaintiff's Instruction 3, on the ground that it purported to cover the entire case and, upon finding the facts there hypothesized, to direct a verdict, but failed to require the jury to find that the effluent discharged into the stream polluted or contaminated the waters of the stream and thereby resulted in damage to plaintiff's land. Defendant argues that "respondent's petition based his cause of action on the pollution . . . of the stream by appellant, resulting in damage to his land, and he can recover only on that one ground."

Plaintiff contends that the omission is not erroneous on the following reasoning: had the City of Tipton proceeded under the laws of eminent domain "to condemn an easement for the flow of this sewage through respondent's land, necessarily pollution would have had to be anticipated without having become a then established fact." And further: "the acts required to be found in the instruction as drawn constituted an actionable wrong and necessarily presupposes pollution without requiring that it be found," citing in support Kent v. City of Trenton, 48 S. W. (2d) 571; Carpenter v. City of Versailes, 65 S. W. (2d) 957; Riggs v. City of Springfield, 126 S. W. (2d) 1144.

It is not contended that any of these cases expressly passes upon this question, and we cannot agree that anything held in any of these cases leads to plaintiff's conclusion under the facts in the case at bar. For instance, in the Riggs case, it is held that the cause of action accrued "when the sewer was connected with the creek as a permanent improvement, and the city started emptying, to the injury of the riparian owners, *raw sewage* into the creek" (Italics ours), 1. c. 1149 and 1153.

In the case at bar there was evidence to the effect that all the sewage collected through the sewer system at the disposal plant was

there treated and the solid matter separated from the liquid matter and that the liquid matter was filtered and otherwise purified, and that only this treated effluent was discharged into the stream; that the effluent so discharged into the stream was clear and free from contaminating elements. If this were true, then the mere fact that the effluent was discharged into the stream would not support plaintiff's contention which was bottomed upon the allegation that the stream had been, and was being, polluted by defendant's acts, to plaintiff's damage. This was not a case for determining damages which are presupposed or anticipated from the fact that a city intends to discharge sewage into a stream, as in the case of a condemnation suit by a city to acquire the use of a stream for sewage disposal purposes. The pollution of the stream by the admitted discharge of the effluent therein was a vigorously contested issue in this case, and proof of this issue by plaintiff was essential to his right to recover under the circumstances here. We think the failure to require the jury to find this fact was error. [Fourcade v. Kansas City, 107 S. W. (2d) 953, l. c. 955.]

Defendant complains of the giving of plaintiff's Instruction 6, which is as follows:

"The jury are instructed that the opinions of the parties who testified as experts are merely advisory and not binding upon the jury, and the jury should accord to them such weight as they believe from all the facts and circumstances in evidence the same are entitled to receive."

In its motion for new trial, defendant charged the instruction was erroneous "because it in effect told the jury that opinions of experts were not binding upon the jury without giving the jury further full and complete proper instructions on how expert opinions should be considered and weighed as evidence in the case." Upon appeal, however, defendant, under its points and authorities, charged error in the giving of this instruction "because it in effect told the jury that opinions of experts were merely advisory and not binding upon the jury, being a comment upon the testimony of appellant's expert witnesses." Plaintiff contends that defendant has thus abandoned the ground of error alleged in its motion for new trial, and that the new and different ground assigned in its brief cannot be considered here.

When a general assignment of error in the giving of an instruction is made in a motion for new trial, the fact that, upon appeal, the assignment of error there may not be good, a reviewing court may nevertheless pass upon the instruction, and, if erroneous, may so hold, regardless of the reason assigned on appeal. [Stid v. Railroad, 236 Mo. 382, l. c. 398; Wampler v. Railroad, 269 Mo. 464, l. c. 483; Brashear v. Light Co., 226 Mo. App. 1060.] However, when a specific assignment of error is set out in the motion for new trial, the

assignment on appeal must conform thereto. Sterrett v. Metropolitan Street Ry. Co., 225 Mo. 99, l. c. 106, wherein it was said:

"Where there are highly specific allegations of error in the motion for new trial, and no general allegations to reach other alleged errors, the assignment of errors here must conform to the specific assignments made in the motion." [See, also, Lumber Co. v. Niedermeyer, 187 Mo. App. 180, l. c. 188.]

While, in view of these authorities, the case should not be reversed upon this assignment of error, nevertheless since the case may be retried, we deem it proper to point out that the instruction is erroneous as an improper comment upon the evidence. An instruction essentially identical with plaintiff's Instruction 6 in this case was held erroneous on this ground by this court in Ziekle v. St. P., K. C., S. L. R. Co., 71 S. W. (2d) 154. Such instructions have likewise been condemned in Conduitt v. Gas & Electric Co., 326 Mo. 133, 31 S. W. (2d) 21, 26.

Plaintiff's Instruction 8 told the jury "that the fact, if you so find the fact to be, that the stream or watercourse mentioned in evidence has been the natural drainage for the City of Tipton, or a large part thereof. Constitutes no defense in this action."

Defendant challenges this instruction on the ground, among others, that it is misleading. While the instruction may be technically correct, we think this brief statement might mislead the jury into thinking erroneously that no consideration should be given to defendant's evidence with respect to the drainage of impurities from the City of Tipton into the stream in question. Upon a retrial of this case, said instruction should not be given in its present form.

Defendant's Instructions "E" and "K" were drawn on the theory that the Statute of Limitations began to run against plaintiff's cause of action long prior to the construction and commencement of use of its sewer system. In ruling the demurrer to the evidence, we have ruled against this contention, and hence these instructions were properly refused.

Complaint is made of the trial court's refusal to permit certain expert witnesses to answer hypothetical questions, and the questions are not set out in defendant's brief, nor is there any reference to the record where the questions may be found. We should not attempt to search out and to assume what questions are involved in defendant's complaint.

Defendant complains of the exclusion of a carbon copy of a letter which the witness, who was not the author of the letter, stated he had taken from the files of the State Health Department, over which files he exercised joint custody. Objection was made on the ground that the letter was not signed by anyone (and this was not disputed); that it was not shown that the original could not be produced; that the witness did not write it, and that if it was ever written and

mailed it is an *ex, parte,* unverified statement and not admissible in evidence, unless the purported author is present and subjects himself to cross-examination. In sustaining the objection, the court said, "there is nothing there you couldn't show by the witness' evidence." As a general rule, certainly an unsigned, unverified *ex parte* statement is not admissible in evidence. There was no showing that this was a record required by law to be kept. Its exclusion was properly ruled.

For error in instructions, the judgment is reversed and the cause remanded. All concur.