241 S.W.2d 64 (1951)
DUNCKER
v.
ST. LOUIS PUBLIC SERVICE CO.
No. 28115.
St. Louis Court of Appeals. Missouri.
June 19, 1951.
*65 Salkey & Jones, Carroll J. Donohue, St. Louis, for appellant.
George M. Hagee, Raymond F. McNally, Jr., St. Louis, for respondent.
HOUSER, Commissioner.
This is an action for personal injuries sustained by a passenger in a fall on a *66 streetcar, based on a res ipsa loquitur assignment of negligence as follows: "That on April 26, 1949, plaintiff boarded one of defendant's eastbound cars: * * * that after plaintiff had boarded said car and paid his fare, the defendant's agent and servant, acting within the course and scope of his employment, negligently caused, suffered and permitted said car unexpectedly to give a sudden, violent and unusual jerk, jolt, lurch and swaying motion, and that thereby and by reason of said negligence the plaintiff was thrown to the floor of said car and greatly injured."
The jury awarded plaintiff $7,500 at the trial in circuit court. The public service company has appealed from the judgment entered on the verdict.
Defendant's first assignments of error relate to the giving of Instruction No. 1, offered by plaintiff.
Preliminary to a consideration of these assignments we notice plaintiff's contention that these errors are not reviewable under Supreme Court Rule 3.23 for the reason that they were not assigned as errors in defendant's motion for new trial. The applicable part of that motion complains of the giving of "erroneous, misleading, illegal and prejudicial instructions asked by plaintiff, and erred in giving each and every instruction given on behalf of plaintiff, and in particular Instruction No. 1 offered on behalf of plaintiff because said instruction is inconsistent with and diametrically opposed to the evidence * *." Plaintiff says that defendant abandoned the specific reason set forth in the motion for new trial; is urging different reasons on appeal, and having made but one assignment of error as to Instruction No. 1 cannot now substitute new specifications of error never submitted to the trial court, citing Sterrett v. Metropolitan St. Ry. Co., 225 Mo. 99, 106, 123 S.W. 877, 879, and Newkirk v. City of Tipton, 234 Mo.App. 920, 136 S.W.2d 147. The contention is overruled. Coupled with the specific assignment of error there is a general charge of error applicable to all instructions given on behalf of plaintiff and we think that is sufficient to justify consideration of the new claim of error, under the holdings in the cases cited.
Instruction No. 1, after hypothesizing the passenger-carrier relationship, the lurch or swaying motion and resultant injury, told the jury: "* * * then the presumption is, in the absence of evidence to the contrary, that such sudden, violent, and unusual lurch or swaying motion, if any, and the plaintiff's consequent injuries) if any, were due to the negligence of the defendant's agent or servant, and your verdict should be for the plaintiff and against the defendant * * * unless you further find from the evidence that such * * motion was not due to the negligence of the defendant's servant or agent; and if you find from the evidence that plaintiff was injured as a direct result of such * * motion of the streetcar, the burden would be on the defendant to show that the same happened without negligence on its part."
Defendant argues that this instruction improperly shifts the burden of proof to defendant; that no legal presumption of negligence arises as a result of plaintiff having adduced evidence of an unusual occurrence; and asserts that the instruction erroneously states in the disjunctive that defendant caused the streetcar to give an unusual lurch or swaying motion, when there was no evidence upon which such disjunctive submission could be based, whereas plaintiff contends that a rebuttable presumption of negligence arises upon proof of the conventional requirements of a res ipsa loquitur case; that an instruction of this kind will not be condemned unless it tells the jury that the defendant must overcome the presumption of negligence or prove itself not negligent by the preponderance of the evidence; and that this particular instruction has been approved three times by this court in passenger-carrier cases.
Our conclusion is that Instruction No. 1 as given requires the reversal of this judgment under the doctrine of McCloskey v. Koplar, 329 Mo. 527, 46 S.W.2d 557, 92 A.L.R. 641; Steffen v. Southwestern Bell Telephone Co., 331 Mo. 574, 56 S.W.2d 47; Harke v. Haase, 335 Mo. 1104, 75 S.W.2d *67 1001; Tabler v. Perry, 337 Mo. 154, 85 S.W.2d 471; Campbell v. Terminal R. R. Ass'n of St. Louis, 235 Mo.App. 56, 126 S.W.2d 915, for the reason that it shifted to defendant the burden of showing nonnegligence.
While for years the proof of a set of facts giving rise to a res ipsa loquiture presumption was held to shift the burden of proof to defendant, Turner v. Missouri-Kansas-Texas R. Co., 346 Mo. 28, 142 S.W.2d 455, 129 A.L.R. 829, the leading case of McCloskey v. Koplar, supra, changed the law in this respect and held it to be reversible error to give an instruction that the presumption shifts the burden of proof to defendant to rebut the presumption by the preponderance of the evidence; that only the burden of going forward with the evidence shifts; that the burden of proof (the risk of nonpersuasion) rests with the plaintiff throughout the trial, except as to affirmative defenses. The nature of the presumption is that of a permissive inference, which the jury is obliged to weigh, Maybach v. Falstaff Brewing Corp., 359 Mo. 446, 222 S.W.2d 87, loc. cit. 90, and from which the jury may find negligence if the jury is so persuaded, but which the jury is not compelled to accept. Cruce v. Gulf, Mobile & Ohio R. Co., 358 Mo. 589, 216 S.W.2d 78, loc. cit. 82. The trial judge is bound to submit the case to the jury when the proof is sufficient to raise the inference, because the presumption "abides to the end, taking the plaintiff's case to the jury even though the defendant has presented strong rebutting evidence." Turner v. Missouri-Kansas-Texas R. Co., supra, 142 S.W.2d loc. cit 460.
Plaintiff seeks to avoid the effect of McCloskey v. Koplar, supra, on these grounds: 1. that the erroneous instruction used the term "burden of proof" [329 Mo. 527, 46 S.W.2d 563] whereas Instruction No. 1 used the term "burden", but we think "burden" as used therein imports that the burden placed on defendant is the burden of proof, and that it must have been so intended and understood. Clapper v. Lakin, 343 Mo. 710, 123 S.W.2d 27, 33. 2. that the erroneous instruction required defendant to rebut the presumption "by preponderance of the evidence," whereas Instruction No. 1 contains no particular standard or required degree of proof. This is inconsequential. The instruction in Campbell v. Terminal R. R. Ass'n of St. Louis, supra, in structure and connective language was substantially the same as Instruction No. 1. It contained no such requirement and yet was stricken down as violative of the doctrine of McCloskey v. Koplar. We adhere to that ruling. 3. that the McCloskey case was not a carrier and passenger case, but involved the relationship of theater and patron, and that the doctrine that the burden of proof shifts still obtains in carrierpassenger cases. In support of this theory plaintiff cites our decisions in Hartnett v. May Department Stores Co., 231 Mo.App. 1116, 85 S.W.2d 644, 648, and Campbell v. Terminal R. R. Ass'n of St. Louis, supra. It is true that in the former opinion we drew a distinction between carrier-passenger cases and "ordinary res ipsa loquitur cases," holding that in the former the presumption "is not a mere inference such as may be drawn or not by the jury as they see fit, but is a rebuttable presumption of law" throwing upon defendant the burden of showing nonnegligence, failing in which the presumption of negligence becomes conclusive. The ruling in the Hartnett case, supra, although adverted to in the Campbell case, supra, was not followed in the Campbell case and "is not supported by the McCloskey case or later decisions" of the Supreme Court, Duncan v. St. Louis Public Service Co., 355 Mo. 733, 197 S.W.2d 964, loc. cit. 966, and is hereby specifically overruled.
Therefore, following the later decisions of the Supreme Court, and our own original view as expressed in Duggan v. St. Louis Public Service Co., Mo.App., 56 S.W.2d 626, we reassert that the inference raised upon a res ipsa loquitur showing in a carrier-passenger case is a permissive inference only; that the burden of proof remains at all times with plaintiff to establish defendant's negligence; and that the burden of proof to show nonnegligence never shifts to defendant.
*68 Plaintiff contends that Instruction No. 1 is a virtually verbatim copy of the main instruction specifically approved by this court in Crenshaw v. St. Louis Public Service Co., Mo.App., 52 S.W.2d 1035. In that case a distinction was drawn between the main instructions therein and in the McCloskey case, supra, and it was decided that the Crenshaw main instruction of which Instruction No. 1 is a copy did not offend against the ruling laid down in the McCloskey case. The Crenshaw case is directly in point and sustains plaintiff's view but in the light of the later decisions it is plain that the Crenshaw case is contrary to the law as it now exists, and it is our duty to overrule it.
The second assault upon Instruction No. 1 is based upon the use therein of the word "lurch"; that while there is evidence of "swaying" there is no evidence of a "lurch" of the streetcar and that it was therefore error to submit "lurch or swaying motion" disjunctively in the instruction. In case of a retrial of the issues this point may present itself again, and therefore we will pass on this assignment. There is evidence of "swaying", "swaying motion" and of "definite violent movement from side to side." While the word "lurch" was not used by any witness in describing the motion of the streetcar, the foregoing descriptive words are sufficient to authorize the use of "lurch" in the instruction. "Lurch" is defined in Webster's New International Dictionary, 1949, p. 1285, as follows: "To roll or sway suddenly to one side * * *" (italics ours). In 54 C.J.S. page 887 "lurch" is defined as "A sudden swing or rolling to one side; * * *."
The public service company assigns as further error that plaintiff failed to make a submissible res ipsa loquitur case; that no evidence was produced upon which the jury could find defendant negligent; that there is no evidence of an unusual, extraordinary or violent occurrence.
The evidence most favorable to plaintiff shows that plaintiff, an 84 year old man, boarded the streetcar at a regular stop known as "Creveling Walk", which is on the University-Clayton line, on the right of way in Pershing Avenue between Hanley Road in Clayton and Midvale Avenue in University City, Missouri; that plaintiff boarded the car at the front entrance with two other passengers, paid his fare and started walking down the aisle for the purpose of finding a seat, when the car started forward. The car commenced to increase its speed. Plaintiff continued to walk back into the car. The car "arrived at its maximum speed very quickly * * at once * * * not in a normal fashion. * * * It increased its speed quite definitely." As the streetcar gained speed and after it had progressed 100 feet, during which time plaintiff had reached a point in the car about 15 feet away from the fare box, there was a movement of the streetcar variously described as follows (omitting quotation marks): a heavy vibration of the streetcar; a definite moving from side to side; the motion was not one you ordinarily experience when, a streetcar starts off; it wasn't even the motion that one feels in that particular type of streetcar elsewhere in the city; a definite violent movement from side to side; the motion was very unusual; it felt rather unusual; it was unusual because it doesn't happen on other lines; quite a decided movement from one side to the other; quite accelerated * * * sideways and forward; the car moved from side to side in a very jumpy sort of fashion; the car was going from side to side as it was going forward; it was swaying; swaying from side to side; a swaying motion; it was going down on one side and up on the other; quaere how far in inches the car would go in the up and down movement, but when one walks in the aisle you have to hold on to something, hold on to your seat; there were a number of sways, very rapid, and the faster the car went, the more sways there were; the swaying was caused by the speed and the roadbed; there is nothing wrong with the tracks; something wrong with the speed at which the car is operated; the car was going as fast as it could possibly go * * * between blocks; I don't see how the car could have developed a greater speed than it did in that short area there between those two streets; the speed *69 aided and abetted the swaying of the car; witness Mueller experienced the swaying as he rode the car downtown the morning of the trial; he had experienced it many times before plaintiff's injury, and since; he said that it was a swaying that goes to the manner in which the car is operated in that area from Jackson on down to DeBaliviere; witness Hamilton said that is the only line it happens on as he knows; that it happens on that line every day he rides, which is practically every day; that it was quite unusual for that line; that sometimes they go a lot faster than others and then there is more noticeable swaying and bobbing; there was a little bobbing up and down, a little up-and-down stuff once in a while; it was not the bobbing that ordinarily goes with the operation of the streetcar; a little bouncing * * * up-and-down bouncing to it * * * with the swaying; bouncing and swaying * * that is about all it could do and stay on the track; the faster the car proceeded the more the vibration and jumping from side to side. This increased up to the time the speed became about 30 miles an hour. The motion was related to the speed of the streetcar because those streetcars pick up so rapidly * * * attain a very good rate of speed in a very short distance. The force and impact was enough to have people who were entering the car grab hold of something to hold on to. Witness Hamilton was standing * * * wanted to grab hold of a hand brace to hold on * * because he always does, to keep from falling down, * * * when he gets on at Creveling Walk. Plaintiff did not fall as a result of the streetcar starting out; the starting of the car had nothing to do with the accident. It was the swaying and bobbing of the car, not necessarily the rapidity of its movement, that caused plaintiff to lose his balance, according to the witnesses. As plaintiff walked a few steps, 3 or 4 seats from the operator, he began to lose his balance and began swaying. At that time the car had moved 25-50 feet according to witness Mueller, or 100-120 feet in the judgment of witness Hamilton, from Creveling Walk stop. Plaintiff began to stagger. He was being tossed from side to side as he was walking down the aisle and at that time the streetcar was traveling 25 miles an hour. At the time he began to fall the streetcar was going "at least 30 miles per hour." It was evident that plaintiff was losing his balance. He continued in a sort of staggering fashion until he got to the middle exit where there is a well, where one steps down before getting off the car. As he got to the well leading to the exit plaintiff fell to the floor, then rolled down the step. At the time he actually fell and struck the floor the car was then slowing down for the Midvale stop. At that time the motion described by the witnesses "was going on." The streetcar had moved about 3/4 of the distance to the next stop (about 420 feet) when plaintiff fell to the floor.
The recent case of Wenzel v. St. Louis Public Service Co., Mo.Sup., 235 S.W.2d 312, strongly supports the position taken by plaintiff that these facts (insofar as they bear on the question whether the movement was abnormal, unusual, and extraordinary) give rise to the res ipsa presumption. Wholly aside from the controversy over the character of the movement, whether it was usual or unusual, ordinary or extraordinary, normal or abnormal, it is apparent from this review of the testimony that plaintiff has removed himself from the field of general negligence into that of specific negligence. Plaintiff "proved his case too well." His witnesses fixed the cause of the casualty. They established that the real cause of the occurrence was excessive speed over a stretch of defective roadbed. In so doing they identified, and charged the defendant with, precise and specific negligence. All of the testimony of plaintiff's witnesses with reference to the casualty is inextricably interwoven with the concept that excessive speed on that particular roadbed was the cause. Nothing unusual happened until the streetcar had progressed 100 feet or more from the stop at Creveling Walk. The inference is clear that at a slow speed there was no unusual movement. The car devoloped maximum speed in a minimum time, whereupon the unusual, violent vibrating and swaying, jumping bobbing, bouncing *70 movement commenced. Witness Hamilton testified:
"Q. Now, with regard to the motion, did it have any connection with the speed of the streetcar or any relation to the speed of the streetcar? A. Well, I would say so, because those streetcars pick up so rapidly.
"Q. What do you mean? Will you elaborate on that please, Mr. Hamilton? A. When they start, they start rapidly, and attain a very good rate of speed in a very short distance.
"Q. What did that have to do with this swaying you were telling about? A. That is caused by the speed and the road-bed. * * *
"Q. What effect did the speed of the car have on that swaying motion? A. It had a decided effect on it.
"Q. Well, how, Mr. Hamilton? A. It aided and abetted the swaying of the car."
It was also in evidence that the faster the streetcar went the more sways there were and the more the vibration and jumping from side to side, all of which increased up to the maximum speed of 30 miles an hour attained by the car prior to the injury. The evidence further indicated clearly that this phenomenon was peculiar to the operation at that particular place, namely, tile line between Jackson and DeBaliviere; that it does not happen on other lines in the city. The public service company introduced evidence that the condition of the tracks was "very good". Over the objection of defendant, and for the avowed purpose of rebutting this testimony, plaintiff placed on the witness stand one Joseph Feuchter, a consulting engineer and traffictransportation specialist, who made a survey of the tracks between Creveling Walk and Midvale Avenue with a transit, and photographed the tracks. He determined the level of the track and the horizontal displacement of the individual rails of the eastbound track. From his survey he prepared a plat showing two lines representing the north and south rails of the eastbound track, which frequently coincided and at times diverged from one another. The chart showed that at some points the south rail was higher than the north rail; at some points they were the same; and at others the north rail was higher than the south rail. He testified that the rails deviated from a true straight line. The greatest deviation in height of the two rails at any one point along the distance between the two stops was 5/8 inch. Although he said on cross-examination that the track was "in average condition," this witness' testimony, charts and photographs, together with the testimony of the witnesses Mueller and Hamilton, indicated the cause of the occurrence with sufficient clarity and precision to take the case out of the realm of general negligence and was enough to make out a submissible case on specific negligence.
Where a plaintiff, either personally or through witnesses for whom he vouches, knows the cause of an occurrence and demonstrates that cause to the jury he cannot invoke the aid of the res ipsa rule of evidence, which is reserved for those whose knowledge of the cause of the injury is lacking or necessarily is inferior to that of those who manage the instrumentality. He will not be permitted to go to the jury on the basis of the permissive inference allowing a finding of negligence in the abstract, i. e., some kind of negligence, unspecified, because that would permit the jury to speculate on whether the injury was caused in some other way. Berry v. Kansas City Public Service Co., 343 Mo. 474, 121 S.W.2d 825, loc.cit. 830. In such case there is no occasion or room for the presumption or inference which the res ipsa loquitur rule affords, Belding v. St. Louis Public Service Co., 358 Mo. 491, 215 S.W.2d 506, loc. cit. 510, and the specific negligence should be submitted to the jury. Jones v. Kansas City Public Service Co., 236 Mo.App. 794, 155 S.W.2d 775, loc. cit. 777.
As we said in Lochmoeller v. Kiel, Mo.App., 137 S.W.2d 625, loc.cit. 629: "It is well settled in the decisions that a plaintiff, who, having pleaded general negligence only in his petition, introduces evidence of specific negligence so as to show fully the cause or manner of occurrence of the accident, is not entitled to the aid of a presumption of negligence, but must submit *71 his case upon the specific negligence shown by his evidence. Otherwise the result would be to permit the jury to speculate upon the question of how plaintiff's injury might have been received, notwithstanding his own evidence which purportedly showed his definite knowledge of the specific negligent act or omission which had resulted in the accident." See also Venditti v. St. Louis Public Service Co., 360 Mo. 42, 226 S.W.2d 599, loc. cit. 603.
Therefore, although the trial court did not err in overruling defendant's motion for a directed verdict, error was committed in submitting the cause on res ipsa instead of specific negligence instructions, and the cause should be remanded to give plaintiff an opportunity to go to the jury on the basis of specific negligence.
Defendant's last assignment of error is that the verdict of $7,500 is grossly excessive, and that in any event a substantial remittitur is in order. In view of the fact that we are reversing the judgment and remanding the case the propriety of a remittitur is no longer before us, and we will not determine the now academic question whether the verdict was excessive. In the event of a retrial and a verdict for plaintiff our present determination of the question of excessiveness would be decisive of the question of adequacy or inadequacy of the next verdict only if the evidence on the issue of damages at the two trials should be identical upon the prospect of which we will not now speculate.
For error in Instruction No. 1 and in submitting the cause on general instead of specific negligence instructions, it is the recommendation of the Commissioner that the judgment be reversed and the cause remanded for a new trial.
PER CURIAM.
The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.
The judgment of the circuit court is, accordingly, reversed and the cause remanded for a new trial.
ANDERSON, P. J., and McCULLEN and BENNICK, JJ., concur.