STATE of Missouri ex rel. STATE HIGH-
WAY COMMISSION of Missouri,
Appellant,

v.

Hattie B. ROSS, O. B. Ross, and Lois H.
Ross, Respondents.

No. 22795.

Kansas City Court of Appeals.
Missouri.

Nov. 3, 1958.

Robert L. Hyder, Ralph H. Duggins, Jefferson City, for appellant.

James Glenn, Macon, L. F. Cottey, Lancaster, for respondents.

BROADDUS, Presiding Judge.

This action was commenced in the Circuit Court of Adair County by the State Highway Commission for the purpose of condemning a right-of-way for the relocation of State Highway Route 6, across the land of the defendants Hattie B. Ross, O. B. Ross and Lois H. Ross. Upon defendants' application for a change of venue the cause was sent to Schuyler County for trial. On a trial to a jury in that court the defendants were awarded damages in the sum of $1,850. From such judgment the Highway Commission perfected this appeal.

The facts are that since 1907 respondents have owned a farm in Adair County, adjacent to the town of Novinger, which at the date of the institution of this suit contained some 425 acres. The C. B. & Q. Railroad (abandoned several years ago) originally ran east and west through the farm splitting it into two parcels, the north tract containing about 120 acres of pasure land and being the site of the farm buildings, and the south tract containing some 305 acres of sandy loam bottom ground of which 250 acres was susceptible of profitable cultivation. The natural drainage of the land is from north to south.

Near the east side of the north tract of respondents' farm the railroad in the early days had built a spur leading northward from its main east-and-west line, in the angle formed by the juncture of those two roadbeds a lake of some 26 acres had been formed which served as the water supply for livestock pastured on the north tract. In the memory of men it had never gone dry.

In 1931 old Highway No. 6 was built on an east-west course through the farm, a few feet to the south of the main railroad dump and parallel to it, but at a somewhat lower elevation. Between the highway and the dump a deep ditch was excavated into which all surface water from the north was channeled through two or three culverts under the railroad and down which it flowed eastward to the Chariton River some three-quarters of a mile east of the farm. Drains and levees on the south part of the farm took care of such surface water as came from the highway right-of-way, or from any other direction, so that, at least from 1931 on, respondents had no problem with surface drainage. The Chariton River sometimes overflowed its banks and flooded the lower fields, but with the completion of the new Chariton River Drainage Ditch that problem was solved. The farm, in respondents' opinion, was then worth $60,000.

In 1953 the State Highway Commission decided to relocate Highway No. 6 by simply moving it a few feet north to the top of the abandoned railroad dump, and, to that end, instituted the present suit to condemn 6.917 acres of respondents' farm for additional right-of-way. The land taken is alleged to include 4.994 acres in the old C. B. & Q. right-of-way and an irregular strip of slightly over two acres adjoining it on the north, that is, along the south of the north tract of the farm. The relocation project had been completed by the time the trial was held and the evidence was principally concerned with items of claimed damage which had actually been experienced by respondents as a result of the taking. Among those items were:

(a) The fact that in grading up the north side of the new highway appellant had torn out that portion of the old spur track dump that stood on the condemned strip of land and which, by its juncture there with the main railroad dump, had formed the dam or levee that impounded respondents' water supply for the north part of their farm, so that the lake was permitted to drain and go dry, thereby rendering the north part of the farm unsuitable for the regular pasturing of livestock.

(b) The fact that a ditch or drain leading westward from a point at or near the southwest corner of the lake had been filled

up by the construction work, so that water previously collected therein and carried thence to a culvert under the railroad and emptied into the deep ditch between the old highway and the railroad, whence it flowed eastward to the Chariton, could no longer escape by that route.

(c) The fact that respondents' woven wire fence approximately 1600 to 1700 feet in length was destroyed by the construction of the road.

(d) The fact that the deep ditch originally excavated between the old highway roadbed and the main railroad dump, into which surface water from the north tract of respondents' farm drained through culverts under the railroad and through which such water was then channeled eastward into the Chariton River, was completely filled up and eliminated as a natural drain.

(e) The fact that the Highway Department, near the west side of the farm and adjacent to the north line of the new highway right-of-way, excavated a large pit, 750 feet long and averaging 15 or 16 feet in width, in which to collect surface water from the north, including that from the town of Novinger, and then piped that impounded water through a 30-inch drain directly south under the new highway where it was released on respondents' south fields, specifically into a small borrow pit in the northwest corner of respondents' 89-acre leveed field, whence it overflowed and stood on that field at such depth that it ruined the crops growing there.

Several witnesses on behalf of respondents testified that the fair market value of the farm immediately prior to the condemnation was from $125 to $130 per acre, and immediately after the taking $100 per acre. Respondent, O. B. Ross, placed the damage at a much higher figure.

■ Appellant's first contention is that the court erred in admitting respondents' Exhibits I and J over the objection of appellant for the reason that these photographs were not a fair representation as to the condition of the property either before or after the appropriation.

Appellant is in no position to urge this point. An examination of its motion for new trial discloses that it specifically attacks respondents' Exhibits C through G, but no mention is made of Exhibits I and J. And nowhere in the motion is there an allegation of error on the part of the trial court in admitting evidence generally.

In the case of Sterrett v. Metropolitan St. Ry. Co., 225 Mo. 99, 123 S.W. 877, 879, our Supreme Court said:

"Where the motion for new trial specifically points out the evidences which appellant says should have been admitted, * * * and contains no general charge of error in admitting or rejecting evidence, * * * then appellant is bound by the terms of his motion below, and cannot go beyond it for assignment of errors here. * * Where there are highly specific allegations of error in the motion for new trial, and no general allegation to reach other alleged errors, the assignment of errors here must conform to the specific assignments made in the motion. * * * When, in a motion for a new trial, the party says to the court, 'you erred in refusing to admit this particular evidence,' and upon the question of evidence says no more, then that is the only error to which the trial court's attention has been called and can be the only assignment of error here."

To the same effect are the more recent cases of Mitchell v. Russell, Mo.App., 170 S.W.2d 137, 138, and Newkirk v. City of Tipton, 234 Mo.App. 920, 136 S.W.2d 147, 156.

The next assignment is that the court erred in the admission of evidence as to acts and conditions caused by the contractor rather than by appellant. Appellant's argument indicates that the evidence complained of related to pumping water

from the lake and damaging a fence. In neither case is its argument sound. First, as to the matter of pumping water for the purpose of dampening the road; the matter arose twice during the trial, both times during the testimony of respondent, O. B. Ross. The first occurrence is found on page 38 of the transcript. No objection was made by appellant. The questioning of Mr. Ross continued for four pages, and once again the matter came up. This time appellant objected and the Court stated: "Yes * * to dampen down the road * * * yes, that's not an element of damage." Thus it is apparent that when appellant did object to this testimony the court sustained its objection.

■ Second, as to the matter of the destruction of the fence: The only fence involved in the instant case was respondents' steel and wood post, woven wire fence, which ran along the land condemned for a distance of 1,600 to 1,700 feet. The only conclusion to be reached from an examination of appellant's argument is that appellant is laboring under a misapprehension of the facts, viz., that the fence was not located on the land taken by the State. The actual fact of the matter is that the fence was located on the land taken. When appellant took the land it automatically got the fence standing on it. The destruction of the fence by appellant is not the point; the point is that the strip of land with the fence on it was worth more than a similar strip without the fence. The case of Kamo Electric Cooperative v. Baker, 365 Mo. 814, 287 S.W. 2d 858, is not applicable to this set of facts. Instead, the rule stated in the case of State ex rel. State Highway Commission v. Dockery, Mo.Sup., 300 S.W.2d 444 applies. In that case it was held that the value of the property taken is the value of the land as enhanced by the value of the fixtures located thereon. It is only when the damaged or destroyed fixtures are not located on the land taken that their damage or destruction must have been reasonably foreseeable at the time of the taking. We rule the point against appellant.

■ Appellant next contends that the court erred in allowing one of the attorneys for respondents in his argument to the jury to state the value of the fence. The transcript shows that the attorney said: "If we say that that fence was worth, say $250—." Thereupon appellant's counsel said; "Now, Your Honor, there's no evidence as to what the value of the fence was, and I object. I object to any comment when there's been no evidence to substantiate it." The Court then said: "There was no value given in the evidence." Whereupon respondents' attorney promptly turned to another phase of the case. There was no request made that the remark be withdrawn or that the jury be instructed to disregard it. Apparently appellant at the time was satisfied with the court's statement that "there was no value given in the evidence." We fail to see where appellant has any legal reason to complain.

Appellant's last contention is that the court erred in giving at the request of respondents Instruction No. 1A, which defines special benefits. Appellant says it announces an improper and incorrect statement of the law. The instruction here criticized is an exact copy of defendant's Instruction No. I which met with the approval of this court in the case of State ex rel. State Highway Commission v. Hartman, 226 Mo.App. 604, 44 S.W.2d 169, 170. And our holding in the Hartman case that the instruction properly declared the law relative to special benefits was expressly approved by the Supreme Court in the fairly recent case of State ex rel. State Highway Commission v. Goodson, 365 Mo. 260, 281 S.W.2d 858, 862.

Finding no error in the record prejudicial to appellant the judgment is affirmed.

All concur.