The JACK L. BAKER COMPANIES, Inc., Appellant,

v.

PASLEY MANUFACTURING AND DISTRIBUTING COMPANY and Astor J. P. Leavitt, Respondents.

No. 51660.

Supreme Court of Missouri, Division No. 2.

Feb. 13, 1967.

Modified on Court's own Motion and Motion for Rehearing and to Transfer to Court En Banc Denied March 13, 1967.

Motion for Rehearing and to Transfer to Court En Banc Denied April 11, 1967.

Charles W. Hess, of Linde, Thomson, VanDyke, Fairchild & Langworthy, Kansas City, for appellant.

William H. Sanders, Dean F. Arnold, David L. West, Kansas City, for respondent, Pasley Mfg. and Distributing Co., Caldwell, Blackwell, Sanders & Matheny, Kansas City, of counsel.

Douglas Stripp, James F. Duncan, Kansas City, for respondent, Leavitt, Watson, Ess, Marshall & Enggas, Kansas City, of counsel.

FINCH, Judge.

This is an appeal by plaintiff from a judgment in its favor for $3,000.00 on the basis that the award was inadequate. We have jurisdiction because the difference between the amount of the judgment and what plaintiff seeks exceeds $15,000.00.

Plaintiff was engaged in the steam cleaning and sandblasting business. A high-pressure propane tank trailer owned by defendant Leavitt, which was to be repaired by defendant Pasley, was delivered to plaintiff's shop for steam cleaning preparatory to the repairs thereon by Pasley. The trailer still contained some propane gas. An explosion and fire occurred, resulting in damage to the structures on plaintiff's property. A recital of the evidence pertaining to liability is unnecessary because the only questions on appeal involve the action of the trial court in withdrawing the issue of loss of profits from consideration of the jury and the sufficiency of the court's instructions with reference to the measure of damages.

Plaintiff's petition alleged interruption of its business as a consequence of the damage to its facilities with resultant loss of business. The court permitted plaintiff to offer evidence in support of these allegations but at the conclusion of the testimony instructed the jury that the issue of loss of business was withdrawn and the evidence thereof should not be considered in arriving at its verdict.

The rule in this state with respect to loss of anticipated profits resulting from actionable conduct of another is that they "are recoverable only when they are made reasonably certain by proof of actual facts which present data for a rational estimate of such profits." Yaffe v. American Fixture, Inc., Mo., 345 S.W.2d 195, 199. In Tnemec Company, Inc. v. North Kansas City Development Co., Mo., 290 S.W.2d 169, 174, this court stressed that the evidence must be sufficiently definite and certain for the jury to make a reasonably accurate estimate of the loss without resorting to speculation. The court said: "This court and the courts of appeals of this state have been strict in evaluating the sufficiency of the evidence warranting a recovery of damages for loss of profits. Our courts have refused to permit a jury to speculate, without substantial basis, as to what might be probable or expected profits as an element of damages."

We have concluded that the evidence of loss of profits offered by plaintiff did not meet the test laid down in the cases in this state and that the trial court correctly withdrew that issue from the jury.

Unquestionably, there was damage to the structures at plaintiff's place of business, but the operation was not shut down as a result of the explosion and fire. The Leavitt truck was steam cleaned the day following the explosion. Plaintiff's president, claiming loss of business, testified that people had called in and told him they thought the business was closed and that was the reason they did not come in after the explosion. However, he did not identify any such people, or testify how frequently this occurred, or make any attempt to enlighten the jury as to the amount of business which he could identify as having been lost in this manner. Baker testified that there were some times when they could not do sandblasting because the roof over that area leaked, but he stated that they were able to take care of all customers who presented themselves for either sandblasting or steam cleaning and that they did not turn away any business.

Plaintiff also offered in evidence the corporate tax returns of the corporation for the years 1962, 1963 and 1964. The corporation had been organized on or about March 1, 1962. Prior to incorporation, the business had been operated on an individual basis. In addition, plaintiff offered in evidence an exhibit which for the year 1963 gave a month by month profit and loss analysis.

The tax return for 1962 (the last ten months of the year) disclosed a net loss for that period of $65.21.

The 1963 tax return shows that the corporation had a net loss for that year of $2,052.31.

The 1964 tax return shows a net profit for the year of $6,884.72. Plaintiff argues that the change from a loss of $65.21 in 1962 to a profit of $6,884.72 for 1964 discloses a trend in the business during that period which would indicate an anticipated profit for 1963 of $3,400.00. This is arrived at as being the median between the 1962 loss and the 1964 profit. Plaintiff then points out that instead of a $3,400.00 profit in 1963, the company actually had a loss of $2,052.31, and that this was sufficient evidence to support a verdict of $5,452.31 for loss of profits for the year 1963.

We hold that these tax returns did not provide the requisite substantial basis for determining probable lost profits. There is no evidence to show a steady trend from loss to profit from the inception of corporate operations on March 1, 1962, to the year 1964. There was no evidence to show a month by month increase in business in 1962. The tax return gave no breakdown by months and plaintiff did not see fit to introduce a corporate month by month profit and loss analysis as it did with respect to 1963. An examination of the monthly profit and loss figures for the year 1963 discloses a very uneven and erratic performance as regards profits. The company operated in the black during only three of the twelve months of that year. Operating losses of

$594.01, $87.77, $182.59, $448.47, $47.39, $180.80, $807.11, $979.47 and $1,996.81 are shown for the months of January, February, March, April, July, August, September, October and December of 1963. Operating profits of $978.68, $1,386.47 and $906.96 appear for the months of May, June and November. This certainly does not show a trend from an unprofitable operation in 1962 to a profitable operation in 1963, interrupted only by the explosion and fire in mid October.[1] The figures show that the corporation operated at a loss in seven of the first nine months, all of which occurred prior to the explosion which took place on October 15, 1963.

Plaintiff's brief contends that the 1963 profit and loss statement shows that the company had a loss of revenue of something over $5,000.00 during November and December of that year. We do not agree. The gross operating revenue of the company during those two months amounted to $14,114.33. The total operating revenue for the year was $90,929.29, so that the operating revenue for the months of November and December was within $1,000.00 of equalling one-sixth of the gross income for the entire year. That would indicate little, if any, deviation in gross receipts for that period in the absence of evidence that income of the business would be greater in November and December than in other portions of the year. There was no evidence offered to so indicate. On the contrary, the profit and loss statement for 1963 indicates that, except for the month of December, the period of greatest gross operating receipts occurred in the late spring and summer months.

---

1. An exhibit was offered by plaintiff to show the amount of business done by the individually operated business during the months of January and February, 1962, immediately prior to incorporation. This was excluded by the court, but we note that it disclosed that the business operated at a profit during both months, whereas the corporation had a loss in January and February, 1963. Furthermore, the gross operating receipts for January and February, 1962, were $11,- 159.84 and $11,715.04, respectively, whereas for the same months in 1963 the figures were $6,999.63 and $7,381.13. This indicates that the business was declining in 1963 from what it had been in 1962. This was early in the year and had no relationship to the explosion in October, 1963. These figures show the fallacy of assuming a gradual increase from 1962 through 1963 and 1964 and of estimating profits on that basis.

Plaintiff also points out that the profit and loss statement shows that the company had a loss for the month of December, 1963, of $1,996.81. This loss, however, cannot be attributed to loss of business from the explosion because the gross receipts for the month are the second largest of any month during the calendar year and the expenses deducted for that month explain why a loss is shown. The company charged off bad debts of $1,133.59 and interest in the amount of $1,297.67 in December. Total interest charged during the rest of the year amounted to only $180.00 and there were no bad debt charges during any other month of the year. In addition, the statement discloses that expenditures for taxes and licenses in December were much greater than during any other month of the year, and the amount expended for supplies was considerably higher than that made during other months.

The profit and loss statement for November, 1963, shows that the corporation made a profit of $906.96. Plaintiff explains that this was due to the fact that no officers' salaries were charged during that month. However, the profit and loss statement and the tax return disclose that officers' salaries for the year amounted to $22,000.00, which was slightly higher than the amount charged in 1964, and was slightly higher than the rate at which salaries were charged for the ten months of corporate existence in 1962.

■ There is no basis for comparison of the months of November and December in 1963 with corresponding months in 1962 and 1964 because plaintiff furnished no monthly profit and loss analysis for either of those years and such information is not shown in the corporate tax returns. It is pure speculation to say, based on the evidence introduced, that the company suffered a loss of business and a loss of profits during November and December of 1963. There was no sufficient evidence on which the trial court properly could have submitted the issue of loss of profits to the jury.

Plaintiff's second complaint is that the jury was improperly instructed as to the measure of damages.

The court gave Instruction No. 8, as follows:

"If you find the issues in favor of the plaintiff, then you must award the plaintiff the Jack L. Baker Companies, Inc., such sum as you believe will fairly and justly compensate the plaintiff for any damages you believe it sustained as a direct result of the occurrence mentioned in the evidence."

The court refused Instructions Nos. 17 and 18 which plaintiff tendered. Instruction No. 17 was as follows:

"If you find the issues in favor of the plaintiff, then you must award the plaintiff The Jack L. Baker Companies, Inc., such sum as you believe represents the difference in the fair market value of the plaintiff's premises immediately before and immediately after the occurrence mentioned in the evidence."

Instruction No. 18 corresponded to MAI No. 15.01, defining "fair market value."

It is plaintiff's contention that No. 8 was erroneous and that the refusal of Nos. 17 and 18 constituted error.

Instruction No. 8 corresponds to MAI 4.01 and is the instruction prescribed therein for recovery of personal or property damage. The Committee Comments and the Notes on Use make no provision for enlargement.

The Missouri Supreme Court Committee on Jury Instructions which drafted MAI originally submitted two proposed instructions on damages in its report to the court dated April 19, 1963. One was MAI 4.01. The other was designated MAI 4.02. On December 20, 1963, the court en banc approved the committee's report and the forms of instructions therein on a preliminary

basis, with final approval to await consideration of tne proposed instructions at meetings to be held under the auspices of The Missouri Bar.

Proposed MAI 4.02 was a longer form instruction than MAI 4.01. It detailed specific items which the jury could consider in arriving at its verdict for either personal injury or for property damage. It included language for determination of property damage on the basis of the difference in fair market value of the property immediately before and immediately after the occurrence.

The Committee Comments indicated that it felt that MAI 4.02 involved a risk of error not present in the shorter form. With reference to MAI 4.01, the committee said that it "is short, simple and easily understood. Since no particular items of damage are set out, there is no risk of the jury being improperly instructed on damages not supported by the record." When the court acted finally on the proposed instructions, proposed MAI 4.02 was eliminated and the only damage instruction for personal or property damage approved was MAI 4.01. Only in the case of eminent domain cases did the court retain language with respect to fair market value before and after in determining the amount of damages. See MAI 9.02.

■ Rule 70.01(b), V.A.M.R., provides that whenever an instruction applicable in a particular case is contained in MAI, "such instruction shall be given to the exclusion of any other on the same subject." It is obvious from examination of the report of the Supreme Court committee and the final action of the court that it was intended that the short form instruction on damages set out in MAI 4.01 should be used both for personal injuries and property damage. Pursuant to Rule 70.01(b), the trial court correctly gave that instruction and refused Instructions Nos. 17 and 18.

■ Plaintiff complains that Instruction No. 8 did not sufficiently inform the jury as to what factors should be considered in arriving at its verdict. We do not agree. Plaintiff was permitted to offer evidence as to the value of plaintiff's property immediately before and after the explosion. Plaintiff's president so testified. The transcript discloses further that plaintiff was permitted to argue that testimony to the jury, and consequently that evidence was before the jury for its consideration and the jury could consider it in determining what sum would fairly and justly compensate the plaintiff.[2] Plaintiff's president testified that the difference in value before and after was $13,380.00, but it was developed on cross-examination that the witness in a prior deposition had stated that he did not know the value of the improvements before the explosion. The court admitted evidence of expenditures of $2,453.15 for repairs plus $5,600.00 for a Butler type building to replace the sanding shed. Defendants argued this was improvement, and plaintiff's brief states "this was a more expensive type of structure although it performed approximately the same type of function as the damaged shed." Plaintiff's president mentioned but did not detail work remaining to be done. Plaintiff sought to introduce further evidence of cost in installation of a prefabricated Butler building but this was excluded. Plaintiff preserves and presents no point to us with reference to the exclusion of such evidence. Evidently, the jury concluded that the sum of $3,000.00 represented plaintiff's actual property damage. Cases in this state do recognize that where damaged property can be restored to its former condition at a cost less than the diminution in value, the cost of restoration is the proper recovery. Curtis v.

2. This is what the directions contemplate. The Committee's Comment under MAI 4.01 includes the following: "During the instruction conference the parties and the Court should discuss (on the record) just what damages are supported by the evidence and can properly be argued to the jury. In this way jury arguments can proceed without undue interruptions."

Fruin-Colnon Contracting Co., 363 Mo. 676, 253 S.W.2d 158. The jury was not bound to award plaintiff its contended for difference in before and after value. It had such evidence before it, however, for consideration in determining the amount which would fairly and justly compensate plaintiff for its damages, and Instruction No. 8 would have permitted recovery on that basis if the jury had concluded that such sum was necessary to fairly and justly compensate plaintiff for damages suffered as a direct result of the occurrence.

The judgment is affirmed.

All of the Judges concur.