**Leroy EDWARDS, Plaintiff-Appellant,**

v.

**The CITY OF BOWLING GREEN, Missouri, Defendant-Respondent.**

No. 33769.

St. Louis Court of Appeals, Missouri.

Jan. 26, 1971.

McQuie & Deiter, Walter D. McQuie, Jr., Montgomery City, for plaintiff-appellant.

McIlroy & Millan, Bowling Green, for defendant-respondent.

BRADY, Presiding Judge.

The only issue presented by this appeal is whether the trial court erred in sustaining defendant's motion for directed verdict[1] offered at the close of plaintiff's case and entering judgment against plaintiff for the reason plaintiff failed to prove he was damaged.

The petition alleges and prays damages in his favor because " * * * Plaintiff was forced to dispose of livestock kept on said premises on said date at great pecuniary loss to him; and Plaintiff has been forced to discontinue the use thereof (of the premises) for fattening livestock and holding them for market, * * * to his damages * * *."

Plaintiff was engaged in the livestock business at his premises. The only water he had with which to feed his stock was that furnished by defendant. Defendant cut off the water service to the plaintiff under circumstances which are not necessary to relate in this opinion. It is sufficient to

1. The motion was entitled "Motion to Dismiss" but the trial court in its order and judgment and the parties treated it as a motion for directed verdict. We will do likewise.

state that it is inherent in the trial court's ruling on the issue of damages that plaintiff had made a submissible case as to the wrongful nature of defendant's discontinuance of service. The correctness of the ruling on that issue is not presented to us on appeal.

The evidence going to the issue of proof of damage was that when told that his water service was to be discontinued plaintiff determined that he had to sell his livestock immediately because he did not have any other water and could not ascertain when the service would be resumed. He then had on his premises fifty gilts which were bred to registered boars. There was no evidence as to what the gilts had cost him but there was evidence that they brought an average price of $32.00 or $32.50 when he sold them. He also offered his testimony that the fair and reasonable market value of these gilts in the area was $50.00 at that time if they had not been sold on a distress sale basis and if he had time to "search around and find a buyer." His further proof was that these gilts would have pigged on or about October 1st and that their value at that time was $100.00 per head. Plaintiff also had eight cows and calves on his premises when his water service was discontinued. His testimony was he sold these for $150.00 per cow and calf and that had he been able to have water service and keep them until October 1st when the calves would have been weaned they would have brought a price of $225.00 per cow and calf. He also had two springer cows which were due to calve on August 10. These he sold for $100.00 each. His testimony was that they would have had a fair and reasonable market value on October 1st of $225.00 each. Plaintiff also owned three bulls. One he described as a "big bull" for which he paid $350.00 and which he sold for $175.00 when his water service was discontinued. The two "small bulls" cost him $200.00 each and he sold those for $125.00 each. He testified these prices were the fair and reasonable market

value of these animals on the day his water service was discontinued. In connection with the evidence as to his cattle, plaintiff offered to testify that he had sufficient pasture to carry all of them through October 1st at no cost at all other than the cost of water service through defendant's system; that the value on October 1st would not be affected by their size or weight because they would be sold as "stock cattle" not as "fat cattle"; and that the eight calves were healthy and showed no signs of disease or injury.

■ The correct rule as to the loss of anticipated profits is that evidence as to that issue is to be confined to those profits made reasonably certain by proof of actual facts presenting data upon which the jury could base a rational estimate of such profits. See Wandell v. Ross, 241 Mo.App. 1189, 245 S.W.2d 689, l. c. 694, and cases there cited. Of course, what specific evidence is admissible under such a rule cannot be itemized here. That must depend upon the type of business engaged in, the manner profits are computed, and a myriad of other factors. We make no attempt to set out all of the evidence that would be admissible. It is sufficient to state that while plaintiff's evidence was that he need not furnish any additional feed or incur any expense as to the cattle, there was no such evidence as to the gilts. The cost of such feed, if any was necessary, would be a factor in computing anticipated profits. There was also no evidence upon which the jury could base a determination that all the gilts would live through pigging, nor, in the event an attempt was to be made to recover for the pigs, the average litter that could be expected and the mortality rate of the gilts and pigs, the cost of raising the pigs until sale, and the fair and reasonable market value in that locality of the pigs as of the date plaintiff originally intended to dispose of them. In like manner, this evidence fails to furnish any basis for the jury to believe the two springer calves would calve successfully and both mother

and offspring survive, nor that all eight cows and calves could reasonably be expected to live until the date plaintiff anticipated selling them. Again we emphasize that we recite these evidentiary failures as examples only and leave the admissibility or inadmissibility of any evidence to be determined by the rule we have set out above. Neither does this decision require the acceptance of such evidence at face value. Its weight is for the jury which will have in mind, in addition to their own common knowledge about such matters, the witness's qualifications as an expert both as to the survival rate of the animals involved and the market price which could be obtained for them at the pertinent date. Nor do we rule that evidence which will meet the required standard can ever be offered in this case. All we do rule is that this evidence fails to do so.

 Nevertheless we rule the trial court committed reversible error in sustaining defendant's motion. Plaintiff's petition with respect to damages is not based solely upon anticipated profits. Plaintiff also alleged he was forced to dispose of his livestock at a pecuniary loss. His evidence as to that issue was plain and clear and furnished a basis upon which, if believed, the jury could arrive at his loss without resort to speculation and conjecture.

There are no such elements involved in plaintiff's loss of $175.00 for the big bull and $150.00 for the two small bulls. His evidence was plain and unequivocally that the bulls cost him a total of $750.00, that this was their fair and reasonable market value in the area on the day he had to sell them, and that he had to sell them because of the discontinuance of his water service for $425.00, thus incurring a loss of $325.00. The same is true of the evidence as to the gilts. The fifty gilts he sold brought an average price of $32.00 or a total of $1,600.00. His testimony was that they were worth $50.00 a head or

$2,500.00 if it had not been necessary to sell them on an immediate distress sale basis. If the jury had been given an opportunity to consider this evidence and had believed it, he incurred a loss of $1,225.00 plainly stated by his evidence and not the basis of any speculation or conjecture.

It follows that this case must be reversed and remanded for a new trial. Wandell v. Ross, supra. See also Jack L. Baker Companies v. Pasley Mfg. & Distributing Co., Mo., 413 S.W.2d 268; Mitchell v. Southwestern Bell Tel. Co., Mo.App., 298 S.W.2d 520. It is so ordered.

DOWD and WOLFE, JJ., concur.