**Michael F. JARMAN, Appellant,**

v.

**Carl and Vera GRIGGS, Respondents.**

**No. WD 58070.**

Missouri Court of Appeals,
Western District.

Nov. 7, 2000.

Gwen Adele Edwards, Kansas City, for appellant.

Richard Paul Beard, Sedalia, for respondent.

PAUL M. SPINDEN, Chief Judge.

Michael F. Jarman operated a cocktail lounge in Excelsior Springs. They leased the premises for the lounge from Carl and Vera Griggs. When the lounge's roof started leaking in early 1995, Jarman asked the Griggs to repair it. In February 1996, the Griggs reroofed the building. Jarman, however, sued the Griggs alleging that his business lost profits because of the leaking roof. The circuit court found that, although it believed that Jarman did lose some business because of the leaking roof, Jarman did not meet his burden of establishing the amount of damages that he suffered. Jarman appeals, and we affirm the circuit court's judgment.

Jarman asserts that the circuit court's judgment that he did not meet his burden of proof as to the amount of damages was against the weight of the evidence.[1] In reviewing this decision, we

1. In making its judgment, the circuit court also took judicial notice that riverboat gambling was legalized in Clay County during 1994 and 1995 and that local casinos were in

must affirm the circuit court's judgment in a court-tried case unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Moreover, we must act cautiously, acting only if our beliefs are firm, in reversing a judgment on the ground that it is against the weight of the evidence. *Id.* We accept as true the evidence and inferences therefrom which are favorable to the circuit court's judgment, and we disregard all contrary evidence. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654 (Mo. banc 1989).

The evidence established that the roof started leaking in Jarman's business in early 1995 and leaked through the ceiling over the fireplace, hallway, pool tables and dance floor. Jarman claims that he lost business because of these leaks.

As to the issue of lost profits, Jarman presented Bruce Cully, a certified public accountant, as an expert witness. Cully testified that, although businesses typically experience an increase in sales after their first year, Jarman's business sales declined. Cully calculated that Jarman's sales should have increased nine percent in 1995 and six percent in 1996. Based on those percentages, Cully concluded that Jarman's business lost profits of $5557 in 1995 and $13,837 in 1996. Cully acknowledged that he could not say that the leaking roof was the only problem that caused Jarman's lost profits. Cully also did not identify in which months Jarman's business began losing sales. He said that he was not concerned with Jarman's monthly financial statements and did not use them because too many fluctuations beyond sales could have affected their figures.

The circuit court, however, did its own review of the income statements and found that Jarman's sales for 1994, 1995 and 1996 did not establish a pattern of lost sales. The circuit court outlined this sales comparison chart:

| | 1994 | 1995 | 1996 |
|---|---|---|---|
| February | $10,318.65 | $10,612.53 | $10,025.24 |
| May | $ 9,075.46 | $11,176.75 | $ 9,864.44 |
| December | $14,163.32 | $10,254.88 [2] | $13,286.61 |

The court found that Cully's reports were "inconsistent on a monthly and yearly basis." The court also found that it believed Vera Griggs' testimony that Jarman had told her that his bartender was stealing from him during that same period. The circuit court concluded:

This court finds that there was a problem with a leaking roof in [Jarman's] business. It further finds that a business could reasonably expect to lose some customers with water coming in on the dance floor, pool tables, and in the

hallways. The difficulty lies in connecting an actual amount of lost sales with the water problem when all conditions were not the same. For example, plaintiff spent different amounts on advertising, which would affect sales.

. . .

[A]lthough this [c]ourt believes Jarman lost some business due to the leaking roof, whether that amount is $200.00 or $2,000.00 is pure conjecture. This court cannot, under Missouri law, engage in speculation in arriving at a dam-

direct competition for Jarman's business. Jarman complains that the circuit court erred in taking judicial notice of these facts because the effects of casinos on businesses such as Jarman's would not be of common knowledge and, therefore, would not qualify as appropriate facts to be judicially noticed. We need not decide, however, whether the circuit court erred in taking judicial notice of these

facts because, even without these facts, sufficient evidence supported the circuit court's decision.

2. From our review of the exhibit, the circuit court should have indicated an amount of $9998.04 for December 1995.

age amount. [Jarman] has the burden of proving the amount of damages, and although he made every effort to do so by his own testimony and that of an expert witness, the amount of damage, if any, as a result of the leaking roof, remains uncertain.

We agree with the circuit court.

 Lost profits are recoverable " 'when they are made reasonably certain by proof of actual facts which present data for a rational estimate of such profits.' " *Jack L. Baker Companies, Inc. v. Pasley Manufacturing and Distributing Company*, 413 S.W.2d 268, 270 (Mo.1967) (citation omitted). "Recovery is prohibited 'when there is uncertainty or speculation as to whether the loss of profits was the result of the wrong[.]' " *Thoroughbred Ford, Inc. v. Ford Motor Company*, 908 S.W.2d 719, 735 (Mo.App.1995) (citation omitted).

Although the circuit court agreed that Jarman's business may have suffered lost profits because of the leaking roof, Jarman did not present data for a rational estimate of those profits. Jarman asserts that, because he presented business records for the time that his business operated, the circuit court had enough evidence to decipher his damages with a sufficient degree of certainty. The circuit court differed, saying that the records did not provide a basis for making a rational estimate.

Jarman's expert provided the circuit court with calculations indicating that Jarman's business should have increased its sales in 1995 and 1996, but the expert acknowledged that he could not say that lost profits resulted directly from the leaking roof or identify in which months Jarman's business began losing sales. The expert admitted that a number of other business decisions could have caused Jarman's lost profits. The circuit court believed that Jarman's bartender was stealing from the business during this same period and that this affected profits. Hence, the circuit court's conclusion that Jarman did not provide a sufficient basis for its making a "rational estimate" of lost

profits was not against the weight of the evidence. Had the circuit court have calculated its rational estimate of lost profits on this evidence, it would have been engaging in pure speculation. We, therefore, affirm the circuit court's judgment

EDWARD H. SMITH, and HOWARD, JJ., concur.